M’Girk, C. J.,
delivered the opinion of the Court.
This was an action of ejectment brought by Wright against Hill and Thomas for a lot or piece of ground situate in or near nortii St. Louis. The declaration is in the usual form, plea the general issue, a verdict and judgment were given for Wright the plaintiff. On the trial the plaintiff gave in evidence, by consent, a translation of a concession to Joseph Brazeau dated 20th June, 1794, whereof the following is a copy: To Don Zenon Trudeau, Captain in the fixed regiment of Louisiana, Lieutenant Governor Commandant in chief of the western part of the Illinois, humbly prayeth Joseph Brazeau, resident in this village of St. Louis, has the honor to set forth that he wishes to obtain a tract of land situate to the north of this village, beyond the mound called la, grange de tern, to be four arpents wide extending from the bank of the Mississippi west by south (o 1-4 g o) by about twenty arpents in length, commencing at the ridge where the said mound stands, and extending towards the N. N. W. as far as the stony creek or near it, so that the said tract shall be bounded on the east by the bank of the Mississippi, and on the other sides by the domains of his majesty and partly by lands re-united to said domain, over which the present concession actually extends in order that the petitioner may gather hay therefrom for his cattle, &c. &c., and your petitioner will ever pray, &e. St. Louis, 1st June, 1794. J. Brazeau. Then follows the concession of the Lieutenant Governor. We, Lieutenant Governor and Commander in chief of the western part of Illinois, having as-certained that the tract asked by the petitioner belongs to his majesty’s domain, part thereof having reverted to said domain in consequence of the relinquishment of the former proprietors and the other part having never been conceded, and as no one is injured thereby, do therefore certify that said Jo. Brazeau has been put in possession of the piece of land described in his petition, having four arpents in front by twenty in depth, which extends N. N. W. from the foot of the ridge whereon the grange de terre stands, up to stony branch or near it, bounded on one side by the Mississippi banks, and on the opposite side by land not granted or re-united- to his majesty’s domain, and at one end, that is, N. N. W., bounded by the stony creek or its vicinity, and towards the S. S. E. by the concessions granted to a free mulatress: named Esther. In faith whereof we have given the present in the town of St. Louis: the 10th June, 1794. Zenon Trudeau, Lieutenant Governor, &c. &c. Then follows *176 a grant of the Lieutenant Governor to Brazeau for the land, inform dated 20th June, 1794. On the 12th day of May, 1798, Joseph Brazeau made his deed to Louis Labeaume for the tract of land above granted to him, reserving to himself four arpents to be taken at the foot of the mound or little hill in the south part of the said land, selling to Labeaume only sixteen arpents in depth. On the 15th February, 1794, Labeaume piesented his petition to the Lieutenant Governor, setting forth that he had purchased Brazeau’s land, and praying that the Governor would grant him 360 arpents, including the quantify he had purchased of Brazeau. The boundaries of the land are set forth as follows : twenty arpents in depth from the Mississippi up stony creek W. S. W. by sixteen arpents in front along the Mississippi, to begin at the intersection of the road with the creek, which is the same front with the petitioner’s land, the space included within the perpendicular from the road to the river, the creek and .the river will nearly complete the quantity asked by the petitioner. A copy of a survey made by A. Soulard, Surveyor General, was given in evidence, together with the order of the Governor to Soulard to make the survey, and with an order to put petitioner in possession. On the 3d of September, 1806, Labeaume presented his petition and order of survey to the board of commissioners for the adjustment of land claims for confirmation, which was rejected. On the 22d day of September, 1810, the board again took up Labeaume’s claim and confirmed the same to tile extent of three hundred and fifty-six arpents, reserving to Brazeau his four arpents reserved bjf him in his sale to Labeaume. It was proved on the trial of this cause that Labeaume in May, 1800, worked on the tract of land mentioned in the survey; that he dug a ditch around a part thereof; that he built a house about the centre of the tract. A plat and survey of the claim of the plaintiff and also of the claim of the defendants’ made by order of the Court, was given in evidence. It was admitted on the record that in 1816, Labeaume sold the said tract of land to Chambers, Christy and Wright, the plaintiff, and that subsequently there was a partition of the land between them, and that the lot now in dispute fell within Wright’s share. It was also admitted that the defendants were in possesion of the land sued for. The defendants claimed under a concession made to one Labuxiere in the year 1769, by one St. Ange. They claim under the heirs of Labuxiere, which concession covers the parcel of land of which the jury found them guilty. The evidence accompanying this concession, is a certified copy made by the recorder of land titles for the State of Missouri, under the act of Congress from a paper book called Livre Terricn, No. 1, pp. 28 and 29, by which it appears that on the 18th day of July, 1769, St. Ange and Labuxiere granted or conceded on the demand of the widow Hebert a title to her and her heirs of a tract of land two arpents broad by the ordinary depth of forty arpents, its width fronting on the Mississippi, bounded on the north by Labuxiere, &c., on certain conditions therein mentioned. Also a copy of a concession taken from Livre Terrien, No. 1, folio 30, read by consent, which is as follows : Sr. Labuxiere on the 18th day of July, 1769, on the demand of Sr. Labuxiere, attorney for the King, who has exposed to us that he has no prairie to make hay, that the one we have granted to him between the Rivilet of Belle Fontaine and stony run is barely sufficient to plow, Ac., that we be pleased to grant to him about two arpents of land and more should there be any found which has not been granted, which are bounded on the one side by the stony run and on the other side by the land of the widow Hebert, on the one end or width by the bluffs of the Mississippi on the ordinary depth of forty arpents. Thereupon we have granted and do grant to Sr. La *177 buxiere the said two arpents of land in width, and more should there he any found on the depth of forty arpents in the same way and manner as above designated, &c. (Signed) St. Ange. Labuxiere. Then the defendant gave in evidence a copy of certain confirmations by the recorder of land titles for Missouri, by which it appears that a concession to widow Hebert for a tract ol’ land of two arpents by forty has been made which lies in and about the place the land lies which was granted to St. Ange to [by] her in 1769. The defendant also proved that Joseph Labuxiere cultivated land south of rock creek and north of Madame Hebert, 8 or 9 years. He cultivated there both before and after the massacre, which was in 1780. There was no enclosure about it except the common fence. Labuxiere was not a man who worked himself, but his slaves worked it. A few years after the massacre, the people generally left their lands for fear of the Indians. Some remained and worked their lands with their arms in their hands. Witness says he knew Labuxiere’s hands to work there 55 years ago. Another witness knows that Labuxiere cultivated land south of the rocky branch, between the road and the river, 64 or 65 years ago, and continued to cultivate until the Americans scared him away, says it is about 42 years since he first heard of Labuxier.e’s death, says Labuxiere went to Cahokia about the year 3782 or 3.
It was proved by another witness that about 15 years before the trial in 1832, La-beaume applied to .his mother, Mrs: Hebert, to buy her claim. It was admitted by the parties that Joseph Labuxiere died at Cahokia in Illinois, 29th of April, 1791, that he left heirs now living in Missouri and Illinois, and that the defendants have acquired by purchase of the heirs all the right which the said Joseph Labuxiere had in the lands, in question at his death, which may not have been forfeited or abandoned.
The defendants offered in evidence a general-notice of sundry gentlemen, residents of St. Louis, which notice began thus: To the Recorder of Land Titles. Sir, for the benefit of all interested, please to record the registered concessions of Livres Terrien, No. 1, 2, 3, 4, 5 and 6, on file in your office, which was certified by the Recorder of Land Titles for the present time; this notice was rejected by the Court. The defendants then asked the Court to give the jury about twenty instructions, as follows:
First. That in July, 1769. St. Ange had power to originate the title under which the defendants claim, and which has been given in evidence.
Second. That this grant gave to Labuxiere a good title.
Third. That the power of St. Ange to make the grant in question, maybe inferred from the practice of- the French Government in making similar grants, and by the exercise of the power.
Fourth. That the jury are to presume that St. Ange, who acted as an officer of Spain in 1769, was such officer, and that as such officer he did his duty and did not exercise an authority not given to him by law.
Fifth. That the rules and regulations of the French Government, with regard to the distribution of lands in Upper Louisiana, prevailed there until 1769, if not until Nov. 1770, and were adopted by Spain as her regulations for that purpose.
Sixth. That if Labuxiere, by permission of St. Ange in July, 1769, went into possession of the land in question, and possessed the same for more than ten years from that time, .or for any period of ten years during the time Spain had the posses-session of Louisiana, such possession gave Labuxiere a right to the land in question.
*178 Seventh. That if defendant has proved Labuxiere once in possession of the land in question, the jury are to presume he remained in possession until his death, unless the contrary is proved.
Eighth. That a person having a just title to land, evidenced by a grant to him, shall not be considered as having abandoned his right to said land by removing from it; but to show an abandonment, there must be proof that he left the land with the intention of abandoning his right thereto.
Ninth. That if Labeaume obtained his order of survey under which the plaintiff claims, by false and fraudulent representations, or in bad faith, he nor those claiming under him can claim the land in question by prescription.
Tenth. That the law of prescription, which formerly existed here, ceased 1st June, 1816, and if defendants’ right to the land in question was not barred by prescription, then it cannot be so barree! now.
Eleventh. That if Labeaume possessed said land in bad faith, the plaintiff cannot make title to said land by adding to the time he possessed it, the time Labeaume possessed it.
Twelfth. That the confirmation of Labeaume’s claim by the U. S., operates merely as a relinquishment of their claim to the land to him; but cannot so operate as to defeat the claims of Labuxiere or his heirs, if he or they had any good claim to the same.
Thirteenth. That if the claim of Labuxiere or his heirs to the land is not legal and complete, but is equitable and inchoate, it is protected by the treaty of 30th April, 1803, between Prance and the U. S., and could not have beer, the subject of a grant to Labeaume claiming adversely.
Fourteenth. The French commandant, St. Ange, had authority to make the grant of land to Labuxiere, a copy of which, taken from the provincial land hook called Livre Terrien, has been given in evidence in this case.
Fifteenth. The authority of St. Ange, the French commandant, to make the grant to Labuxiere, may be inferred from the exercise of the power and the practice of the country.
Sixteenth. If the jury shall he satisfied from the evidence, that the order of survey and the confirmation in favor of Labeaume, which have been given in evidence, were made in prejudice of the rights of prior claimants of the land, whose titles are confirmed, then the order, and survey, and confirmation, are invalid in point of law as against such prior claims so confirmed.
Seventeenth. That the confirmation to Labeaume, as given in evidence, does not vest in him, and those claiming under, a title either absolute in itself or paramount to any older claim which has been since confirmed.
Eighteenth. That the confirmation of Labeaume is not a legal title sufficient in law to defeat the claim of Labuxiere, or those claiming under him, inasmuch as the claim of Labuxiere is evinced by a grant of St. Ange.
Nineteenth. If the jury are satisfied from the evidence that a grant was made by St. Ange, absolute in its terms, which stands unannulled on the land book in favor of Labuxiere, such title is sufficient to bar the recovery of the plaintiff in this ease.
Twentieth. The French commandant, St. Ange, had authority to make the grant to the widow Hebert, a copy of which taken from the provincial land book called Livre Terrien, a copy of which has been given in evidence in this case.
*179 The Court refused to give these instructions, and in lieu thereof gave the following :
Eirst. That if St. Ange had not power to grant titles to land in the upper part of the former province of Louisiana in 1769, his acts in originating titles have been legalized and sanctioned by the governments that succeeded the Erench Government in 1762, in cases where the government and the grantee were alone concerned.
Second. That confirmations by the Board of Commissioners operates only as an acknowledgment by the Government of the U. S., that the claimant has a right to a patent from the U. S.
Third. That the mere removal from a tract of land does not of itself amount to an abandonment of the right and title to said land.
Fourth. The presumption in law is always in favor of the official acts of persons duly commissioned or qualified to act, in the station or capacity to which their acts relate.
The defendants excepted to the instructions refused and to those given. It seems to us that no error has been committed by the Court as to the instructions it did give, they are all of them as far as they go in favra of the plaintiffs in error. We will not undertake to investigate each of the instructions refused, because we are of opinion that the nineteenth instruction, asked by the plaintiffs in error in the Court below, brings up every question which could be considered under all the other instructions.
The nineteenth instruction asked assumes that if the jury are satisfied from the evidence that a grant was made by St. Ange, which was absolute in its terms, and which stands unannulled on the land book or Livre Terrien, in favor of Labuxiere, such title is sufficient to bar the recovery of the plaintiff.
The first point to be inquired into, is the power of St. Ange to make the grant.
Who St. Ange was We cannot ascertain from the record. Whether he was an officer of the French Government in 1769, at the date of his grant, or whether of the Spanish Government, which about that time succeeded to the French Government, or whether he was an officer of either of them, or indeed any officer at all, we cannot say. The only evidence on the record with regard to that matter is, that it appears that on the same day he made the grant to Labuxiere, he also made a grant of two arpents of land by forty to the widow Hebert. This, it is said, is proof enough that St. Ange was in truth an officer of the then existing government of the country, and that being an officer he had power to grant lands. In neither of these grants, by the words in them, does he assume to be an officer of any government whatever. The Circuit Court was called on to say that because the American Government confirmed to the widow Hebert her claim, that that is a recognition that St Ange was an officer having power to grant land. With regard to that matter, we will only say that the American Government might, as between itself and the claim-ant, do whatever it chose, it might Confirm the land to those who set up a claim thereto, or it 'might give it away \ and furthermore, we only have before us one case in which the American Government has recognized St. Ange as being an officer;, and even in that case the record of confirmation shows that the claim was confirmed on the ground of possession and cultivation prior to 1803, and not on the ground of a concession made by a French officer having power to grant land.
But it is insisted that inasmuch as this grant was recorded or rather existed on the provincial land book called Livre Terrien, that it is to be considered as existing by *180 matter of record, and that its verity cannot he disputed. The record no where shows us what is the true character of this book, called a land book. It may or may not be a record of Spanish or French grants of land. Whence this book came we do not know. Whether it was found in the public archives handed over by the Spanish authorities to the American officers, who received possession of the country, or not, we cannot say. There is on the record no evidence that the fact is so. Some proof ought to have been offered and placed on the record to satisfy the Courts of Law whether the Livre Terrien is of itself a record or not.
Before we conclude the case, we will say a few words more with regard to St. Ange and his power to grant lands under the French Government. By a royal ordinance of the King of Spain, dated 24th August, 1770, it is recited that the Lieutenant General Dsn Alexander O’Reilly, in his letter No. 33, written at that place under date of the 1st March, transmitted to me copies of the instructions framed for the Lieutenant Governor established in the Illinois, that of the Natchitoches, and the nine particular Lieutenants of the districts of this province, he states that he repaired, &e., to certain places, and the grants of lands within this province have been entrusted by His Most Christian Majesty to the Governor and Commissary Ordonnateur, and that he considers it expedient that henceforth tile Governor alone be authorized by His Majesty to make such grants. We know the Governor of the province of Louisiana did not reside at St. Louis. St. Ange made his grant at St. Louis. The Commissary of the French Government, according to O’Reilly’s opinion, could also grant lands; we see nothing which shows that St. Ange was that officer.
This we think is enough to show that the defendants have no sufficient bar against the plaintiff’s right to recover. The plaintiff is entitled, under his confirmation, to recover according to the statute of this State. The Court did not err in refusing the nineteenth instruction asked by the defendant’s counsel. The judgment of the Circuit Court is affirmed with costs.